Gary E. Fox, Esq. - I.D. No. 011251975
**FOX & MELOFCHIK, L.L.C.**
12 Christopher Way
Suite 101
Eatontown, New Jersey 07724
(732) 493-9400
garyfox@jerseylawoffice.com
Counsel for Plaintiffs

**UNTIED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREEN FIELD CONSTRUCTION GROUP, L.L.C., a New Jersey limited liability company; MICHAEL TENNYSON; SEAN BRENNAN; and LVT POWER SOLUTIONS, LLC, a New Jersey limited liability company, | : CIVIL ACTION<br>: NO.: |
| Plaintiffs, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| RUSSELL LEWIS; JANE DOE I; JANE DOE II; JOHN DOE I; JOHN DOE II; ABC CORP. 1; and XYZ LLC I | |
| Defendants. | |

**COMPLAINT**

Plaintiffs, GREEN FIELD CONSTRUCTION GROUP, L.L.C., a New Jersey limited liability company; MICHAEL TENNYSON; SEAN BRENNAN; and LVT POWER SOLUTIONS, LLC, a New Jersey limited liability company, by and through their attorneys, Fox & Melofchik, L.L.C., for their Complaint against Defendants, RUSSELL LEWIS; JANE DOE I; JANE DOE II; JOHN DOE I; JOHN DOE II; ABC CORP. 1; and XYZ LLC I, allege on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is an action by two New Jersey limited liability companies and two of their members against the member/manager of both limited liability companies for conversion, breach of the duty of loyalty, breach of fiduciary duty, and for violation of Federal and State RICO Statutes (18 U.S.C. § 1962 and N.J.S.A. 2C:41-2) based on the Defendant's misappropriation of the assets of the Plaintiff limited liability companies and further seeking to void fraudulent transfers made by Defendant Lewis to his wife, children and unknown fictitious entities.

2.      Plaintiffs seek damages in excess of $75,000.00 and any equitable or other relief the Court may deem appropriate and proper.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Federal law, in particular pursuant to 18 U.S.C. § 1962 as well as jurisdiction over the civil action between citizens of this State and citizens of North Carolina pursuant to 28 U.S.C. § 1332(a)(1).  In addition, this Court may assert jurisdiction over the Plaintiffs' State law claims that are related to and form a part of the same case or controversy pursuant to 28 U.S.C. § 1367.  The amount in controversy is substantially beyond the $75,000.00 jurisdictional minimum of this Court.

## VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

2

## PARTIES

5.      Plaintiff Green Field Construction Group, L.L.C. (hereinafter "Green Field") is a New Jersey limited liability company with its principal place of business at 494 Sycamore Avenue, Suite 201, Shrewsbury, Monmouth County, New Jersey.

6.      Plaintiff Michael Tennyson (hereinafter "MT") is a member of Green Field and a member of LVT Power Solutions, LLC (hereinafter "LVT") and resides in New Jersey.

7.      Plaintiff Sean Brennan (hereinafter "SB") is a member of Green Field and resides in New York.

8.      Plaintiff LVT Power Solutions, LLC is a New Jersey limited liability company with its principal place of business at 494 Sycamore Avenue, Suite 201, Shrewsbury, Monmouth County, New Jersey.

9.      Defendant Russell Lewis (hereinafter "RL") was a member and manager of Green Field and LVT and resides at 2201 St. James Drive, Southport, North Carolina.

10.      Defendant Jane Doe I is the wife of RL and resides at 2201 St. James Drive, Southport, North Carolina.

11.      Defendant Jane Doe II is the female child of RL and resides at 9515 Night Harbor Drive SE, Leland, North Carolina.

12.      Defendants John Doe I and John Doe II are the male children of RL and reside at 618 Irving Place, Long Branch, New Jersey.

13.      Defendant ABC Corp. I is, upon information and belief, a corporate entity formed by RL with its principal place of business in North Carolina.

14.      Defendant XYZ LLC I is, upon information and belief, an entity formed by RL with its principal place of business in North Carolina.

## FACTS COMMON TO ALL COUNTS

15.     Plaintiffs repeat Paragraphs 1 through 14 as if set forth at length in full herein.

16.     Green Field was initially formed as A&L Construction Services, LLC as a New Jersey limited liability company on July 28, 2008.  That filing document specifically set forth a duty of loyalty and good faith as well as a prohibition against any personal benefit of the members of the LLC.

17.     The above certificate was amended on July 20, 2012 to rename the LLC "A&L Electronics, LLC."

18.     On October 14, 2014, the above amended certificate was further amended to name the LLC "Green Field Construction Group, L.L.C."

19.     Although there were operating agreements signed by members of the Green Field LLC in 2014 and in 2016, the membership of Green Field was changed as of June 1, 2017, whereby MT, RL and SB each held a thirty percent (30%) interest in the LLC and Michael Marke held a ten percent (10%) interest.  No operating agreement was signed by all members after the change in ownership in 2017.  In particular, SB and Marke have never signed an operating agreement for Green Field.

20.     RL was the Chief Financial Officer and Manager of Green Field from its inception in 2008 up to and including the date when RL's wrongful acts, as described and complained of herein, were discovered, and RL was terminated as an employee of Green Field and LVT, and removed as a manager of Green Field and LVT, on February 13, 2020.

21.     LVT was formed by the filing of a Certificate of Formation with the New Jersey Secretary of State on August 6, 2018.  The members of the LLC were MT, RL and Edward O'Brien.  MT had a fifty-one percent (51%) membership interest, RL had a thirty-three percent

(33%) membership interest and O'Brien had a ten percent (10%) membership interest. An operating agreement exists which was signed by MT and RL, but not signed by O'Brien. RL was the Chief Financial Officer and Manager of LVT.

## COUNT ONE
### (Conversion of Green Field Property)

22.     Plaintiffs repeat Paragraphs 1 through 21 as if set forth at length in full herein.

23.     RL was the Chief Financial Officer of Green Field and was in charge of all of the finances of Green Field.

24.     Conversion is an act, or complex series of acts, of willful interference without lawful justification, with any chattel or property of a party in a manner inconsistent with the right of that property, whereby that property owner is deprived of the use and possession of same.

25.     Here, Defendant RL embezzled, misappropriated, and converted the money and assets of Green Field over a period of years.

26.     In particular, Defendant RL has converted, committed theft, and committed mail fraud as follows:

        a.     Check #2873 dated April 18, 2017 to the IRS in the amount of $112,487.00.

        b.     Check #1198 dated August 3, 2017 to the IRS in the amount of $15,000.00.

        c.     Check #3197 dated September 6, 2017 to the IRS in the amount of $20,000.00.

        d.     Check #1206 dated September 20, 2017 to the IRS in the amount of $20,000.00.

        e.     Check #1541 dated January 13, 2017 made payable to RL in the amount of $3,916.67.

        f.     Check #1567 dated March 24, 2017 made payable to RL in the amount of $6,250.00.

g.      Check #14075 dated June 2, 2017 made payable to RL in the amount of $6,250.00.

h.      Check #1200 dated August 15, 2017 made payable to RL in the amount of $5,000.00.

i.      Check #1176 dated January 13, 2016 made payable to RL in the amount of $1,562.50.

j.      Check #1179 dated March 22, 2016 made payable to RL in the amount of $6,250.00.

k.      Check #1186 dated April 22, 2016 made payable to RL in the amount of $6,250.00.

l.      Check #1121 dated May 6, 2016 made payable to RL in the amount of $6,250.00.

m.      Check #718 dated May 12, 2016 made payable to RL in the amount of $6,250.00.

n.      Check #1280 dated June 24, 2016 made payable to RL in the amount of $6,250.00.

o.      Check #1281 dated June 24, 2016 made payable to RL in the amount of $6,250.00.

p.      Check #1282 dated June 24, 2016 made payable to RL in the amount of $6,250.00.

q.      Check #1292 dated July 1, 2016 made payable to RL in the amount of $6,250.00.

r.      Check #727 dated July 8, 2016 made payable to RL in the amount of $6,250.00.

s.      Check #1305 dated July 15, 2016 made payable to RL in the amount of $6,250.00.

t.      Check #1317 dated July 22, 2016 made payable to RL in the amount of $6,250.00.

u.      Check #1335 dated July 29, 2016 made payable to RL in the amount of $6,250.00.

v.      Check #1347 dated August 5, 2016 made payable to RL in the amount of $6,250.00.

w.      Check #1359 dated August 12, 2016 made payable to RL in the amount of $6,250.00.

x.      Check #1379 dated August 26, 2016 made payable to RL in the amount of $6,250.00.

y.      Check #13771 dated September 2, 2016 made payable to RL in the amount of $6,250.00.

z.      Check #1412 dated September 16, 2016 made payable to RL in the amount of $6,250.00.

aa.     Check #1423 dated September 23, 2016 made payable to RL in the amount of $6,250.00.

bb.     Check #1434 dated September 30, 2016 made payable to RL in the amount of $6,250.00.

cc.     Check #1447 dated October 7, 2016 made payable to RL in the amount of $6,250.00.

dd.     Check #1458 dated October 14, 2016 made payable to RL in the amount of $6,250.00.

ee.     Check #1467 dated October 21, 2016 made payable to RL in the amount of $6,250.00.

ff.     Check #1477 dated October 28, 2016 made payable to RL in the amount of $6,250.00.

gg.     Check #1488 dated November 4, 2016 made payable to RL in the amount of $6,250.00.

hh.     Check #1526 dated November 23, 2016 made payable to RL in the amount of $11,250.00.

ii.     Check #1532 dated December 2, 2016 made payable to RL in the amount of $6,250.00.

jj.     Check #744 dated December 8, 2016 made payable to RL in the amount of $7,500.00.

kk.     Check #2458 dated May 12, 2016 made payable to the State of New York in the amount of $16,464.00.

ll.     Check #2432 dated April 15, 2016 made payable to the State of New York in the amount of $16,464.00.

mm.     Check #5109 dated August 9, 2018 made payable to the IRS in the amount of $25,000.00.

nn.     Check #5146 dated September 3, 2018 made payable to the IRS in the amount of $25,000.00.

oo.     Check #14419 dated September 17, 2018 made payable to the IRS in the amount of $25,000.00.

pp.     Check #5188 dated September 24, 2018 made payable to the IRS in the amount of $50,000.00.

qq.     In 2019, RL improperly paid himself out of the funds of Green Field $318,750.00 to which he was not entitled.

rr.     RL improperly paid travel and expenses for his behalf in the amount of $31,696.00.

27.     RL improperly converted assets of Green Field amounting to theft and wire fraud as follows:

a.     Wired from Green Field's account by direct deposit into RL's account on January 8, 2016 in the amount of $4,687.50.

b.     Wired from Green Field's account by direct deposit into RL's account on January 15, 2016 in the amount of $6,250.00.

c.     Wired from Green Field's account by direct deposit into RL's account on January 22, 2016 in the amount of $6,250.00.

d.     Wired from Green Field's account by direct deposit into RL's account on January 29, 2016 in the amount of $6,250.00.

e.     Wired from Green Field's account by direct deposit into RL's account on February 5, 2016 in the amount of $6,250.00.

f.     Wired from Green Field's account by direct deposit into RL's account on February 12, 2016 in the amount of $6,250.00.

g.   Wired from Green Field's account by direct deposit into RL's account on February 19, 2016 in the amount of $6,250.00.

h.   Wired from Green Field's account by direct deposit into RL's account on February 26, 2016 in the amount of $6,250.00.

i.   Wired from Green Field's account by direct deposit into RL's account on March 4, 2016 in the amount of $6,250.00.

j.   Wired from Green Field's account by direct deposit into RL's account on March 11, 2016 in the amount of $6,250.00.

k.   Wired from Green Field's account by direct deposit into RL's account on March 25, 2016 in the amount of $6,250.00.

l.   Wired from Green Field's account by direct deposit into RL's account on March 31, 2016 in the amount of $6,250.00.

m.   Wired from Green Field's account by direct deposit into RL's account on April 8, 2016 in the amount of $6,250.00.

n.   Wired from Green Field's account by direct deposit into RL's account on April 15, 2016 in the amount of $6,250.00.

o.   Wired from Green Field's account by direct deposit into RL's account on December 9, 2016 in the amount of $6,250.00.

p.   Wired from Green Field's account by direct deposit into RL's account on December 16, 2016 in the amount of $6,250.00.

q.   Wired from Green Field's account by direct deposit into RL's account on December 23, 2016 in the amount of $6,250.00.

r.   Wired from Green Field's account by direct deposit into RL's account on December 30, 2016 in the amount of $6,250.00.

s.   Wired from Green Field's account by direct deposit into RL's account on January 6, 2017 in the amount of $6,250.00.

t.   Wired from Green Field's account by direct deposit into RL's account on January 20, 2017 in the amount of $6,250.00.

u.   Wired from Green Field's account by direct deposit into RL's account on January 27, 2017 in the amount of $6,250.00.

v.      Wired from Green Field's account by direct deposit into RL's account on February 3, 2017 in the amount of $6,250.00.

w.      Wired from Green Field's account by direct deposit into RL's account on February 10, 2017 in the amount of $6,250.00.

x.      Wired from Green Field's account by direct deposit into RL's account on February 17, 2017 in the amount of $6,250.00.

y.      Wired from Green Field's account by direct deposit into RL's account on February 24, 2017 in the amount of $6,250.00.

z.      Wired from Green Field's account by direct deposit into RL's account on March 3, 2017 in the amount of $6,250.00.

aa.     Wired from Green Field's account by direct deposit into RL's account on March 10, 2017 in the amount of $6,250.00.

bb.     Wired from Green Field's account by direct deposit into RL's account on April 7, 2017 in the amount of $6,250.00.

cc.     Wired from Green Field's account by direct deposit into RL's account on April 14, 2017 in the amount of $6,250.00.

dd.     Wired from Green Field's account by direct deposit into RL's account on April 21, 2017 in the amount of $6,250.00.

ee.     Wired from Green Field's account by direct deposit into RL's account on April 28, 2017 in the amount of $6,250.00.

ff.     Wired from Green Field's account by direct deposit into RL's account on May 5, 2017 in the amount of $6,250.00.

gg.     Wired from Green Field's account by direct deposit into RL's account on May 12, 2017 in the amount of $6,250.00.

hh.     Wired from Green Field's account by direct deposit into RL's account on June 9, 2017 in the amount of $6,250.00.

ii.     Wired from Green Field's account by direct deposit into RL's account on June 16, 2017 in the amount of $6,250.00.

jj      Wired from Green Field's account by direct deposit into RL's account on June 23, 2017 in the amount of $6,250.00.

kk.   Wired from Green Field's account by direct deposit into RL's account on June 30, 2017 in the amount of $6,250.00.

ll.   Wired from Green Field's account by direct deposit into RL's account on July 7, 2017 in the amount of $6,250.00.

mm.   Wired from Green Field's account by direct deposit into RL's account on July 14, 2017 in the amount of $6,250.00.

nn.   Wired from Green Field's account by direct deposit into RL's account on July 21, 2017 in the amount of $6,250.00.

oo.   Wired from Green Field's account by direct deposit into RL's account on July 28, 2017 in the amount of $6,250.00.

pp.   Wired from Green Field's account by direct deposit into RL's account on August 4, 2017 in the amount of $6,250.00.

qq.   Wired from Green Field's account by direct deposit into RL's account on August 11, 2017 in the amount of $6,250.00.

rr.   Wired from Green Field's account by direct deposit into RL's account on August 18, 2017 in the amount of $6,250.00.

ss.   Wired from Green Field's account by direct deposit into RL's account on August 25, 2017 in the amount of $6,250.00.

tt.   Wired from Green Field's account by direct deposit into RL's account on August 31, 2017 in the amount of $6,250.00.

uu.   Wired from Green Field's account by direct deposit into RL's account on September 8, 2017 in the amount of $6,250.00.

vv.   Wired from Green Field's account by direct deposit into RL's account on September 15, 2017 in the amount of $6,250.00.

ww.   Wired from Green Field's account by direct deposit into RL's account on September 22, 2017 in the amount of $6,250.00.

xx.   Wired from Green Field's account by direct deposit into RL's account on September 29, 2017 in the amount of $6,250.00.

yy.   Wired from Green Field's account by direct deposit into RL's account on October 6, 2017 in the amount of $6,250.00.

zz.  Wired from Green Field's account by direct deposit into RL's account on October 13, 2017 in the amount of $6,250.00.

aaa.  Wired from Green Field's account by direct deposit into RL's account on October 20, 2017 in the amount of $6,250.00.

bbb.  Wired from Green Field's account by direct deposit into RL's account on October 27, 2017 in the amount of $6,250.00.

ccc.  Wired from Green Field's account by direct deposit into RL's account on November 3, 2017 in the amount of $6,250.00.

ddd.  Wired from Green Field's account by direct deposit into RL's account on November 9, 2017 in the amount of $6,250.00.

eee.  Wired from Green Field's account by direct deposit into RL's account on November 17, 2017 in the amount of $6,250.00.

fff.  Wired from Green Field's account by direct deposit into RL's account on November 24, 2017 in the amount of $6,250.00.

gg.  Wired from Green Field's account by direct deposit into RL's account on November 30, 2017 in the amount of $6,250.00.

hh.  Wired from Green Field's account by direct deposit into RL's account on December 8, 2017 in the amount of $6,250.00.

ii.  Wired from Green Field's account by direct deposit into RL's account on December 15, 2017 in the amount of $6,250.00.

jj.  Wired from Green Field's account by direct deposit into RL's account on December 22, 2017 in the amount of $6,250.00.

kk.  Wired from Green Field's account by direct deposit into RL's account on December 29, 2017 in the amount of $6,250.00.

28.   All of the above monies taken by RL were without the knowledge and consent of Green Field or the members of Green Field.

29.   Plaintiffs believe that the foregoing examples of transfers and theft represent the "tip of the iceberg." As discussed below, because RL was the Chief Financial Officer of Green Field and LVT, he opened various bank accounts for both companies and identified himself as

the sole member of both companies who had access to the accounts and the account documents. Therefore, when RL's fraud was discovered and Plaintiffs attempted to understand the extent of RL's fraud, they were unable to secure a volume of documentation related to those accounts. Plaintiffs believe that once they are able to serve subpoenas on those financial institutions and obtain a full accounting of RL's fraud, the resulting damages will be far in excess of what they have already uncovered.

30.     As a result of the improper actions of RL, Plaintiffs Green Field, MT and SB have been damaged.

**WHEREFORE**, Plaintiffs Green Field, MT and SB demand that judgment be entered in their favor and against RL for:

a.     Compensatory damages;

b.     Interest;

c.     Costs of suit; and

d.     Attorneys' fees

## COUNT TWO
### (Conversion of the Assets of LVT)

31.     Plaintiffs repeat Paragraphs 1 through 30 as if set forth at length in full herein.

32.     RL was the Chief Financial Officer of LVT and was in charge of all of the finances of LVT.

33.     As such, he had the ability to set up bank accounts and have access to all of the monies and assets of LVT.

34.     RL set up multiple bank accounts for LVT and has made himself the sole person able to access these monies and records.

13

35.     RL has refused to provide the account numbers, the access passwords and/or the records to those accounts.

36.     Those accounts, monies and passwords are the property of LVT and RL has improperly converted those assets solely to his benefit and to the detriment of LVT and its other members.

37.     As a result of the improper actions of RL, Plaintiffs LVT and MT have been damaged.

**WHEREFORE**, Plaintiffs LVT and MT demand that judgment be entered in their favor and against RL for:

a.     Entry of an order requiring RL to produce all account numbers and passwords of all of the financial accounts of LVT;

b.     Compensatory damages;

c.     Interest;

d.     Costs of suit; and

e.     Attorneys' fees

**COUNT THREE**
**(Duty of Loyalty by RL to Green Field, MT and SB)**

38.     Plaintiffs repeat Paragraphs 1 through 37 as if set forth at length in full herein.

39.     Pursuant to the statutes of the State of New Jersey, RL, as a manager and member of Green Field, owed Green Field and its other members, MT and SB, a duty of loyalty. This duty is a fiduciary duty of RL.

40.     Said duty is comprised of the following specific duties:

a.      The duty to account to the company and to hold as trustee for it any property, profit or benefit derived by RL in the conduct of the company's activities, from the use by RL of the company's property, or from the appropriation of a company opportunity.

b.      To refrain from dealing with the company in the conduct of the company's business as a person having an interest adverse to the company (i.e., self-dealing).

c.      From competing with the company.

41.     The duty of loyalty for managers and members of an LLC is broader than the comparable duty for partners of a general partnership or general partners of a limited partnership.

42.     The statutory duty of loyalty is a default provision that will apply if the LLC's operating agreement does not modify the duty.

43.     Here, there is no operative operating agreement signed by all of the current members of Green Field that would modify the statutory duty.

44.     RL's actions have breached the aforementioned fiduciary duty of loyalty that he owed to Green Field.

45.     As a result of the actions of RL, harm has been caused to Green Field and its other members.

46.     The actions of RL in breaching said duty have been intentional and malicious.

47.     In addition to the above, known actions, RL has secreted information and prevented Green Field and its members from discovering the true state of all of the financial improprieties committed by RL during the time period that he was the Chief Financial Officer.

**WHEREFORE,** Plaintiffs Green Field, MT and SB demand that judgment be entered in their favor and against RL for:

      a.      Compensatory damages;

      b.      Punitive damages;

      c.      Interest;

      d.      Costs of suit;

      e.      Attorneys' fees; and

      f.      Requiring RL to account for all financial transactions that occurred while he acted in a fiduciary capacity as the Chief Financial Officer of Green Field.

## COUNT FOUR
### (Duty of Loyalty by RL to LVT and MT)

48.      Plaintiffs repeat Paragraphs 1 through 47 as if set forth at length in full herein.

49.      Pursuant to the statutes of the State of New Jersey, RL, as a manager and member of LVT, owed LVT and MT a duty of loyalty.  This duty is a fiduciary duty of RL.

50.      Said duty is comprised of the following specific duties:

      a.      The duty to account to the company and to hold as trustee for it any property, profit or benefit derived by RL in the conduct of the company's activities, from the use by RL of the company's property, or from the appropriation of a company opportunity.

      b.      To refrain from dealing with the company in the conduct of the company's business as a person having an interest adverse to the company (i.e., self-dealing).

      c.      From competing with the company.

51.      The duty of loyalty for managers and members of an LLC is broader than the comparable duty for partners of a general partnership or general partners of a limited partnership.

52.     The statutory duty of loyalty is a default provision that will apply if the LLC's operating agreement does not modify the duty.

53.     Here, there is no operative operating agreement signed by all of the current members of LVT that would modify the statutory duty.

54.     RL's actions have breached the aforementioned fiduciary duty of loyalty that he owed to LVT.

55.     As a result of the actions of RL, harm has been caused to LVT and its other members.

56.     The actions of RL in breaching said duty have been intentional and malicious.

57.     In addition to the above, known actions, RL has secreted information and prevented LVT and its members from discovering the true state of all of the financial improprieties committed by RL during the time period that he was the Chief Financial Officer.

**WHEREFORE**, Plaintiffs LVT and MT demand that judgment be entered in their favor and against RL for:

   a.     Compensatory damages;

   b.     Punitive damages;

   c.     Interest;

   d.     Costs of suit;

   e.     Attorneys' fees; and

   f.     Requiring RL to account for all financial transactions that occurred while he acted in a fiduciary capacity as the Chief Financial Officer of LVT.

### COUNT FIVE
### (Common Law Breach of Fiduciary Duty by RL to Green Field, MT and SB)

58.     Plaintiffs repeat Paragraphs 1 through 57 as if set forth at length in full herein.

17

59.     RL, as a member, manager and Chief Financial Officer, had a common law fiduciary duty to Green Field and MT and SB.

60.     RL was entrusted by Green Field and its members with the financial affairs of the LLC.

61.     As such, RL had a fiduciary duty to Green Field and its members.

62.     RL's actions breached that fiduciary duty.

63.     As a result of RL's actions, Green Field, MT and SB have been damaged.

64.     The actions of RL were malicious and intentional.

**WHEREFORE**, Plaintiffs Green Field, MT and SB demand that judgment be entered in their favor and against RL for:

     a.     Compensatory damages;

     b.     Punitive damages;

     c.     Interest;

     d.     Costs of suit;

     e.     Attorneys' fees; and

     f.     Requiring RL to account for all financial transactions that occurred while he acted in a fiduciary capacity as the Chief Financial Officer of Green Field.

## <u>COUNT SIX</u>
### (Common Law Breach of Fiduciary Duty by RL to LVT and MT)

65.     Plaintiffs repeat Paragraphs 1 through 64 as if set forth at length in full herein.

66.     RL, as a member, manager and Chief Financial Officer, had a common law fiduciary duty to LVT and MT.

67.     RL was entrusted by LVT and its members with the financial affairs of the LLC.

68.     As such, RL had a fiduciary duty to LVT and its members.

69.     RL's actions breached that fiduciary duty.

70.     As a result of RL's actions, LVT and MT have been damaged.

71.     The actions of RL were malicious and intentional.

**WHEREFORE**, Plaintiffs LVT and MT demand that judgment be entered in their favor and against RL for:

        a.     Compensatory damages;

        b.     Punitive damages;

        c.     Interest;

        d.     Costs of suit;

        e.     Attorneys' fees; and

        f.     Requiring RL to account for all financial transactions that occurred while he acted in a fiduciary capacity as the Chief Financial Officer of LVT.

## COUNT SEVEN
### (RL Fraudulently Transferred the Assets of Green Field and LVT to the Fictitious Defendants in This Case)

72.     Plaintiffs repeat Paragraphs 1 through 71 as if set forth at length in full herein.

73.     On information and belief, RL transferred the assets of Green Field and LVT, which he converted, embezzled and stole to the Fictitious Defendants in this case with the actual intent to hinder, delay or defraud Green Field and LVT, without receiving a reasonably equivalent value in exchange for the transfer and thus are a fraudulent transfer under the New Jersey Uniform Fraudulent Transfer Act (hereinafter "NJUFTA"), N.J.S.A. 25:2-25.

74.     As a result of the actions of RL and the Fictitious Defendants, the Plaintiffs have been damaged.

19

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against all Defendants for:

      a.     An Order voiding the transfer of said assets;

      b.     An attachment against the transferred assets or other property of the Fictitious Defendants;

      c.     An injunction against all Defendants restraining them from further disposition of the Plaintiffs' property;

      d.     Appointment of a receiver to take charge of these assets that were improperly transferred and any other property of the transferees;

      e.     Attorneys' fees;

      f.     Punitive damages;

      g.     Interest; and

      h.     Costs of suit;

## COUNT EIGHT
### (RL Has Violated the Federal RICO Statute)

75.     Plaintiffs repeat Paragraphs 1 through 74 as if set forth at length in full herein.

76.     The Federal RICO Statute provides for civil damages for "any person injured in his business or property by reason of a violation of 18 U.S. C. § 1962." Tabas v. Tabas, 47 F.3d 1280, 1289 (3d Cir. 1995) (quoting 18 U.S.C. § 1964(c)).  Plaintiffs' Federal RICO claims arise under 18 U.S. C. § 1962(b) and (c).  18 U.S.C. § 1962(b) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S. C. § 1962(c) similarly provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or

20

the activities of which affect, interstate … commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

77.     A properly pled violation of § 1962(c) requires a plaintiff to allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  Here, Plaintiffs have specified above the exact conduct of RL with regards to the improper direct deposits and checks, all specified in detail, of the two enterprises, Green Field and LVT, which amount to a pattern over a period of years of racketeering activity.  The pattern of racketeering activity is clearly satisfied by showing numerous acts which amount to substantially more than two predicate acts of racketeering which include Federal mail fraud under 18 U.S. C. § 1341 and Federal wire fraud under 18 U.S. C. § 1343.  The enterprises did work in New York and New Jersey and thus they were engaged in interstate commerce.  Thus, RL clearly conducted or participated directly in the conduct of the enterprises' affairs and did so through a pattern of racketeering activity, all of which damaged the Plaintiffs.

78.     In addition to the violation of § 1962(c), Plaintiffs also allege that RL violated § 1962(b) by controlling both enterprises as the manager as well as establishing fraudulent conduct of the enterprise through the control of RL and establishing a pattern of predicate acts of racketeering activity.

79.     The reliance by Plaintiffs on mail and wire fraud as a basis for the RICO violation satisfy Fed. R. Civ. P. 9(b) as the allegations of fraud have been pled with specificity.  Plaintiffs have set forth the date, time and place of the alleged fraud with a precise measure of substantiation into these fraud allegations.

80.     As such, Plaintiffs have made out and pled a proper cause of action against Defendant RL for a Federal RICO claim under 18 U.S. C. § 1962(b) and (c).

**WHEREFORE**, Plaintiffs demand that this Court enter an Order pursuant to 18 U.S. C. § 1964 as follows:

      a.    Ordering RL to divest himself of any interest, direct or indirect, in Green Field and LVT;

      b.    Awarding Plaintiffs threefold damages sustained as a result of the fraudulent activities of RL;

      c.    Costs of suit; and

      d.    Reasonable attorneys' fee.

## COUNT NINE
### (RL Has Violated the New Jersey RICO Act)

81.    Plaintiffs repeat Paragraphs 1 through 80 as if set forth at length in full herein.

82.    In New Jersey, a civil action may be brought under N.J.S.A. 2C:41-4 by "any person damaged in his business or property by reason of a violation of N.J.S.A. 2C:41-2." N.J.S.A. 2C:41-2(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Here, RL's action amount to "a pattern of racketeering activity" as defined in N.J.S.A. 2C:41-1(d). RL engaged in at least two incidents of racketeering conduct, one of which occurred after the effective date of the Act and the last of which occurred within ten years after a prior incident of such activity. N.J.S.A. 2C:41-1(d)(1).

83.    The incidents of racketeering activity perpetrated by RL embrace criminal conduct that is either the same or similar purposes, results, participants or victims or methods of

commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents. N.J.S.A. 2C:41-1(d)(2).

84.     RL committed the predicate acts of theft by unlawful taking (N.J.S.A. 2C:20-3), theft by failing to make the required disposition of property (N.J.S.A. 2C:20-9), misapplication of entrusted property (N.J.S.A. 2C:21-15), theft by deception (N.J.S.A. 2C:20-4), falsification or tampering with records (N.J.S.A. 2C:21-4), and mail and wire fraud (18 U.S.C. § 1341 and § 1343.

85.     The racketeering enterprise consists, separately, of Green Field and LVT under N.J.S.A. 2C:41-1(c).

86.     As a result of the actions of RL, the Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against RL as follows:

a.      For treble damages;

b.      For prejudgment interest;

c.      For costs of suit; and

d.      For reasonable attorneys' fees.

Dated:  April __6__, 2021
Eatontown, New Jersey

Respectfully submitted,

By: _____
Gary E. Fox, Esq.
011251975
Fox & Melofchik, L.L.C.
12 Christopher Way
Suite 101
Eatontown, NJ 07724
(732) 493-9400
garyfox@jerseylawoffice.com

23